# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES & APRIL BONHAM,
individually and o/b/o J.B., their minor
son,

      Plaintiffs,

          v.

SUSAN MARIE BOBERSKY,
individually and in her official capacity,
*et al.*,

      Defendants.

NO. 3:19-CV-0709

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are motions to dismiss filed by: (1) Jennifer Oiler ("Oiler") (Doc. 17); and (2) Northwest Area School District ("NASD"), Northwest Area School District Governing Board of Education (the "Board"), James McGovern ("McGovern"), and Adam Sorber ("Sorber") (collectively, where appropriate, "District Defendants") (Doc. 16). Plaintiffs April Bonham ("Bonham") and her husband James allege that their son J.B., a special needs student, was abused - verbally and physically - by his personal transportation aide Susan Marie Bobersky ("Bobersky"), an employee of NASD and transportation contractor Barchik Bus Services, LLC ("Barchik"). Plaintiffs also assert that J.B.'s abuse occurred even though Bonham had previously alerted NASD officials about issues related to the treatment of J.B. during his school transit. As a result, Plaintiffs claim violations of J.B.'s rights under federal and state law. Oiler and District Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

# I. Background

The facts as alleged in the Complaint are as follows:

J.B. is and was a student at NASD. (*See* Doc. 1, ¶ 1). Bobersky was employed by Barchik, as well as by NASD in several capacities, including as a transportation aide. (*See id*. at ¶ 4). Abraham Monroe ("Monroe") was employed by Barchik as a driver. (*See id*. at ¶ 5). Barchik contracted with NASD to provide student transportation services. (*See id*. at ¶ 6). Oiler was employed by NASD as the Director of Special Education. (*See id*. at ¶ 7). Sorber was NASD's Director of Transportation. (*See id*. at ¶ 8). McGovern was NASD's Superintendent. (*See id*. at ¶ 9).

In December 2015, NASD evaluated J.B. to determine if he was a special needs student. (*See id*. at ¶ 15). NASD and Oiler found that J.B. was a student with a disability requiring full autistic support with related services to meet his needs, including specialized transportation. (*See id*. at ¶ 16). J.B. has a primary diagnosis of Autism Spectrum Disorder and secondary diagnoses of Attention-Deficit Hyperactive Disorder, Oppositional Defiant Disorder, Intellectual Disability, and Speech and Language Delay. (*See id*. at ¶ 1). To accommodate J.B.'s needs, NASD provides specialized transportation between his home and school. (*See id*. at ¶ 17).

On December 15, 2015, Bonham, J.B.'s mother, emailed Oiler regarding difficulties her son was having getting out of his specialized car harness. (*See id*. at ¶¶ 18-19). In particular, NASD's employees did not know how to insert and remove J.B. from his harness. (*See id*. at ¶ 19).

The following month, on January 21, 2016, Bonham emailed Sorber with respect to an incident where an employee of Cragle Bus Service, another company that provided transportation for NASD, slapped J.B.'s face and smacked his hands for disruptive behavior during transit. (*See id*. at ¶ 20).

Bonham again emailed Oiler on February 22, 2016 about issues related to J.B.'s transportation. (*See id*. at ¶ 21). Specifically, Bonham advised Oiler that the transportation provider did not know how to get J.B. in and out of his harness, nor did

the provider understand how to redirect J.B.'s behaviors that were caused by his conditions. (*See id.*).

The following year, J.B. attended the Graham Academy, and NASD provided both specialized transportation for J.B. and a personal transportation aide. (*See id.* at ¶ 22). Barchik was one of six (6) contracted transportation companies used by NASD for the 2016-2017 school year. (*See id.* at ¶ 23).

In the 2016-2017 school year, Monroe was the driver of J.B.'s van. (*See id.* at ¶ 28). Bobersky, who also served as a substitute cafeteria worker and secretary with NASD, was J.B.'s personal care transportation aide. (*See id.* at ¶ 29). Shortly after Bobresky began in this role, Bonham observed an aggressive escalation of J.B.'s behaviors. (*See id.* at ¶ 30).

On October 31, 2016, J.B. returned from school with bruising. (*See id.* at ¶ 31). J.B. was kept home from school the following day and taken to the pediatrician. (*See id.* at ¶¶ 32-33). Bonham asked the pediatrician if it was possible that new medication J.B. was prescribed could cause him to bruise easier, but the pediatrician advised that it would not have such an effect. (*See id.* at ¶ 33). Bonham thus contacted the Graham Academy, and after a review of J.B.'s day on the surveillance system, Bonham concluded that the bruising occurred while J.B. was being transported. (*See id.* at ¶ 34).

Bonham telephoned Oiler on November 2, 2016 to express her suspicions regarding J.B.'s injuries, but that phone call was cut short. (*See id.* at ¶ 35). Oiler subsequently emailed Bonham and expressed her appreciation for being informed of those suspicions. (*See id.* at ¶ 36). Bonham also questioned Monroe about her suspicions of abuse, but he denied that any abusive conduct took place. (*See id.* at ¶¶ 37-38). Additionally, Bonham approached Bobersky with her concerns and provided suggestions to utilize to help calm J.B. down. (*See id.* at ¶ 39). Bobersky denied that any misconduct occurred. (*See id.* at ¶ 40).

On November 16, 2016, after Bonham had reported the incident involving her

son, the Board entertained a motion to appoint Bobersky as a part-time personal care transportation aide effective the following day and continuing yearly under the terms of a Memorandum of Understanding between NASD and the Northwest Area Educational Support Personnel Association. (*See id*. at ¶ 41). That motion was unanimously approved by the Board. (*See id*. at ¶ 42).

Bobersky subsequently resigned from her role as transportation aide effective January 27, 2017, but she nevertheless remained in her role as J.B.'s personal care transportation aide. (*See id*. at ¶¶ 44-46).

During this time, Bonham observed an increase in J.B.'s aggressive behaviors. (*See id*. at ¶ 48). In the spring of 2017, S.C., a 12 year old that rode in the same van as J.B., began to come home crying. (*See id*. at ¶ 50). S.C. told his mother that Bobersky was rough with J.B., including, *inter alia*, pulling his hair, slapping him across the face, grabbing his face, and sitting on him. (*See id*. at ¶¶ 51-52). S.C. approached Monroe with his concerns, but he was told to mind his own business and let Bobersky do her job. (*See id*. at ¶ 53). In response, S.C.'s mother had him take an iPad on the van to record Bobersky the next time she was rough with J.B. (*See id*. at ¶ 55).

On April 27, 2017, Bonham received a call from S.C.'s mother informing her that S.C. had captured video of Bobersky's treatment of J.B. (*See id*. at ¶ 56). The video shows Bobersky screaming in J.B.'s face, smacking him, and taking him by his hair and ripping his head and neck over the top of his car seat harness. (*See id*. at ¶¶ 58-59). The video also depicts Monroe stoically driving the van while these events occurred. (*See id*. at ¶ 60).

Bonham immediately reported the incident, and Bonham kept J.B. from having contact with Monroe and Bobersky. (*See id*. at ¶¶ 61-62). NASD, however, continued to allow Bobersky and Monroe to transport other special needs students. (*See id*. at ¶¶ 64-65). Bobersky and Monroe on one occasion questioned S.C. regarding his motivation to videotape their actions. (*See id*. at ¶¶ 64-68).

On May 17, 2017, NASD entered into a new six (6) year contract with Barchik to provide transportation for NASD's special needs students. (*See id*. at ¶ 69).

Criminal charges for simple assault, endangering the welfare of a child, and harassment were subsequently filed against Bobersky. (*See id*. at ¶ 143). Bobersky was permitted to enter into the Accelerated Rehabilitation Program, but to do so she was required to admit to the charges filed against her. (*See id*. at ¶¶ 143-145). Oiler was also criminally investigated for failure to report suspected child abuse. (*See id*. at ¶ 166).

Based on the foregoing, Plaintiffs commenced this action against Bobersky, NASD, the Board, Monroe, Barchik, Anthony Grieco, Oiler, McGovern, and Sorber on April 26, 2019. (*See* Doc. 1, *generally*). In the Complaint, Plaintiffs assert claims for: (1) failure to train against NASD, Oiler, McGovern, Sorber, the Board, and Barchik; (2) state created danger under the Fourteenth Amendment against all Defendants; (3) violation of Section 504 of the Rehabilitation Act against all Defendants; (4) violation of 29 U.S.C. § 794 against NASD, Oiler, McGovern, and Sorber in their official capacities, the Board, and Barchik (Count IV(a)); (5) violation of the Americans with Disabilities Act against NASD, Oiler, McGovern, and Sorber in their individual and official capacities, the Board, and Barchik (Count IV(b));[1] (6) assault and battery against Bobersky, NASD, and Barchik; (7) intentional infliction of emotional distress against NASD, Bobersky, and Barchik; (8) negligence against NASD, Barchik, Bobersky, and Monroe; (9) willful misconduct against NASD, Barchik, and Bobersky; (10) breach of fiduciary duty against Bobersky, Monroe, and Barchik; (11) willful misconduct against NASD and Oiler in her individual and official capacity; and (12) willful misconduct against Barchik and Monroe. (*See id*.).

District Defendants and Oiler separately moved to dismiss the Complaint. (*See*

---

[1]     Two claims are identified as Count IV in the Complaint. Accordingly, these claims will be referred to as Counts IV(a) and IV(b).

Doc. 16, *generally*; Doc. 17, *generally*). Those motions have now been fully briefed, so they are ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

District Defendants and Oiler have moved to dismiss the Complaint on several grounds. (*See* Doc. 18, *generally*; Doc. 21, *generally*). In their brief in opposition to the motion, Plaintiffs did not oppose the motions to dismiss with respect to the dismissal of the Board as a Defendant, the dismissal of the Rehabilitation Act claims

against individual Defendants, and the dismissal of the Title II of the Americans with Disabilities Act claim against individual Defendants. (*See* Doc. 24, *generally*). Further, Plaintiffs concede that their claims for willful misconduct should be dismissed because that is not a distinct cause of action under Pennsylvania law. (*See id*. at 14). As such, those aspects of the Complaint will be dismissed with prejudice. The remainder of the grounds for dismissal raised by District Defendants and Oiler are addressed below.

**A.**     **Section 1983 Claims.**

In the first two Counts of the Complaint, Plaintiffs assert violations of J.B.'s rights under the Fourth and Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. The alleged violations by Defendants NASD, McGovern, Sorber, and Oiler are premised on state created danger and failure-to-train.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend XIV, § 1. The Fourteenth Amendment claim here is based on an alleged violation of J.B.'s substantive due process rights. "The substantive component of the Due Process Clause 'protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992)). It is "'violated by [state conduct] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id*. (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). The "Fourteenth Amendment's shocks the conscience standard [applies] to federal claims alleging the use of excessive force by public school officials." *Id*.

**1.**     **State-Created Danger.**

Plaintiffs first contend that Defendants violated J.B.'s substantive due process

rights under the Fourteenth Amendment pursuant to the state-created danger theory of liability. The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." *Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) (citing *Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)). To prevail on a state-created danger theory, Plaintiffs must prove four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id*. (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Plaintiffs are unable to satisfy the fourth element because there was no affirmative action by NASD, McGovern, Sorber, or Oiler which made J.B. more vulnerable than he would have been had they done nothing at all. The Third Circuit has made clear that under the fourth element, liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282 (internal citations and quotation omitted). Accordingly, to establish the fourth element, Plaintiffs must identify "an

affirmative action, rather than inaction or omission." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citations omitted). And, while the Third Circuit has emphasized that "the line between action and inaction is not always easily drawn," *Morrow*, 719 F.3d at 178, it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." *Bright*, 443 F.3d at 282. But, the affirmative act requirement "is not intended to turn on semantics of act and omission. Instead, the requirement serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Morrow*, 719 F.3d at 179 (alterations and citation omitted).

Plaintiffs have not identified any action by these Defendants in this case that caused J.B. to be more vulnerable than he would have been had they done nothing at all. Rather, Plaintiffs contend that it was NASD's inaction, *i.e.*, its failure to adequately train Barchik, Bobersky, and Monroe and/or its failure to fire Bobersky that caused the harm to J.B. However, the Third Circuit has stressed that "failures to act cannot form the basis of a valid § 1983 [state created danger] claim." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 433 n.11 (3d Cir. 2006); *see also Morrow*, 719 F.3d at 178 (suspending student for bullying but then allowing him to return to school when the suspension ended was not an affirmative act); *Bright*, 443 F.3d at 284 ("mere failure to protect an individual against private violence does not violate the Due Process Clause."). Thus, it is clear that these alleged failures, including the failure to dismiss Bobersky, do not constitute affirmative acts to sustain a state-created danger claim. Moreover, arguing that Bobersky was "promoted" by the Board in November 2016 to a part-time transportation aide (a position she was already alleged to be serving for J.B.) and then allowed to remain in that position after she resigned in

January 2017, (*see* Doc. 1, ¶¶ 29, 41, 44-46), does not amount to an affirmative act. Indeed, "promoting" Bobersky did not "create a new danger for [J.B.] or render[ ] [him] more vulnerable to danger than had the state not acted at all." *Morrow*, 719 F.3d at 178; *see also Robischung-Walsh v. Nassau Cty. Police Dep't*, 421 F. App'x 38, 41 (2d Cir. 2011) (continued employment with and promotions by the police department were not affirmative acts for state-created danger claim). In other words, NASD's "maintenance of the status quo [is] insufficient to create liability." *K.W. by and through White v. SEPTA*, 760 F. App'x 104, 108 (3d Cir. 2019). As such, the Fourteenth Amendment substantive due process claim based on a state-created danger theory against NASD, McGovern, Sorber, and Oiler will be dismissed.[2]

### 2. Failure-to-Train.

Plaintiffs next raise a failure-to-train claim against NASD, McGovern, Sorber, and Oiler. I will address the claim against NASD first, before considering its viability as to these individual Defendants.

### a. NASD.

A § 1983 claim against a municipality may proceed in two ways: the plaintiff may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). While the parties brief both methods, (*see* Doc. 19, 4-7; Doc. 24, 6-7), the

---

[2]     "The Third Circuit has not squarely addressed whether, in such cases, the policy, custom, or practice theory under *Monell* is a separate and distinct analysis from state-created danger, or whether courts must conduct a layered analysis, by first analyzing whether an individual state actor violated a plaintiff's due process rights under the state-related danger theory and then determining the municipality's liability for that violation under *Monell*." *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 865, 587 (W.D. Pa. 2019) (citing *Morrow*, 719 F.3d at 179 & n.21 (" "[W]e need not address whether . . . the School District may be held liable as a municipal defendant.")).

Complaint indicates that Plaintiffs are proceeding on the latter. (*See* Doc. 1, Count I). The failure or inadequacy avenue "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision . . . ." *Forrest*, 930 F.3d at 105. A plaintiff alleging that his injuries were caused by a failure or inadequacy by the municipality must demonstrate "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Estate of Roman*, 914 F.3d at 798 and *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). Of note, a failure-to-train claim does not require a plaintiff to allege an unconstitutional policy. *See Estate of Roman*, 914 F.3d at 798. Thus, while a close relationship exists between policy-and-custom claims and failure-or-inadequacy claims, "the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106. Additionally, a failure-to-train claim against a municipality cannot succeed in the absence of an underlying constitutional claim. *See Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996) (if no underlying constitutional violation, failure-to-train claim will not stand).

Plaintiffs plead a plausible failure-to-train/failure-to-supervise claim against NASD. With respect to the underlying constitutional claim, Plaintiffs clearly assert a violation of J.B.'s substantive due process rights. Indeed, the facts as alleged by Plaintiffs adequately state a claim for the use of excessive force by a public school official in violation of the Fourteenth Amendment. *See Gottlieb ex rel. Calabria*, 272 F.3d at 172-174 (setting forth elements to analyze such a Fourteenth Amendment claim); *see also Tucker v. Sch. Dist. of Philadelphia*, No. 19-889, 2019 WL 3802066,

at *2 (E.D. Pa. Aug. 13, 2019) (analyzing student's excessive force allegations against special education teacher and school district as a substantive due process claim).

Next, Plaintiffs identify sufficient facts to proceed on an inadequate training theory. First, Plaintiffs adequately allege that municipal policymakers had knowledge that its employees would confront a particular situation, namely, J.B.'s specialized needs arising from his medical diagnoses. In particular, Plaintiffs allege that: (1) NASD completed an evaluation of J.B. to determine if he had special needs; (2) that evaluation revealed he required full autistic support with related services; (3) J.B. required specialized transportation; (4) Oiler was informed of difficulties involving J.B.'s transportation, including deficiencies with respect to the handling of his behaviors, as well as abusive action towards him; and (5) Sorber had knowledge of abusive behavior towards J.B. in response to his behavior during transit. (*See* Doc. 1, ¶¶ 15-18, 20-21, 35). These allegations are sufficient to conclude at this stage in the litigation that municipal policymakers, *i.e.*, the Director of Transportation and the Director of Special Education, were aware that NASD employees (or employees of its contractors) would encounter difficult and tense situations during transportation involving special needs students.

Second, Plaintiffs sufficiently plead that such circumstances entail a difficult choice or a history of mishandling. Plaintiffs point to a prior incident with J.B. where force was used against him during transit by an employee of a NASD transportation contractor. (*See* Doc. 1, ¶ 20). The Complaint plausibly sets forth that NASD employees responsible for the transportation and needs of special education students would be presented with difficult situations.

Finally, as stated, the use of force against a student by a school official can violate the Fourteenth Amendment if it shocks the conscience. In short, the unwarranted use of force against a special needs student in the manner pled here meets this standard. Specifically, the allegations in the Complaint and the inferences drawn therefrom plausibly show conscience shocking behavior by NASD's officials because

they failed to ensure that transportation officials were adequately trained with respect to the care and supervision required for handling behaviors of students with special needs despite knowledge that such training was called for.

In sum, Plaintiffs allege in the Complaint that NASD made a conscious or deliberate choice not to provide training to drivers and transportation aides in the proper handling of the behaviors of autistic children. NASD was aware that these employees would encounter tense and stressful situations transporting special needs students, that such situations would involve difficult decisions, and wrong choices in such circumstances could well result in constitutional violations. Restated, the Complaint sufficiently states that the failure-to-train amounted to deliberate indifference on the part of NASD. Plaintiffs may therefore proceed with their failure-to-train claim against NASD.

### b.      Defendants McGovern, Sorber, and Oiler.

Plaintiffs also allege that McGovern, Sorber, and Oiler violated J.B.'s substantive due process rights. Of course, Plaintiffs claim is not that these Defendants personally used force against J.B. in violation of the Fourteenth Amendment. Instead, the claim is that they either established and maintained a practice of not providing transportation providers with proper training for the transportation of special needs students or that they had knowledge of and acquiesced in the violations of J.B.'s constitutional rights.

Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be

made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202). The Third Circuit has recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)) (internal quotations omitted); *see also Laurensau v. Romarowics*, 528 F. App'x 136, 140 n.2 (3d Cir. 2013) ("A supervisor can be held individually liable if his failure to properly train or supervise a subordinate caused a deprivation of the plaintiffs constitutional rights. However, a plaintiff must demonstrate that the supervisor's failure to train amounted to 'deliberate indifference' and that the failure to train was closely related to the plaintiff's injury."). Accordingly, a viable failure-to-train claim against a supervisory official requires an underlying constitutional violation. *See*, *e.g.*, Santiago, 629 F.3d at 130 (reasoning that a claim for supervisory liability "necessarily includes as an element an actual violation at the hands of subordinates"); *see also Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011) (""[T]he absence of an underlying constitutional violation precludes any

supervisory liability on a 'knowledge or acquiescence' or 'failure to train theory.'").

Plaintiffs have adequately stated a claim against both Sorber and Oiler for the alleged violation of J.B.'s substantive due process rights. Sorber, as Director of Transportation, and Oiler, as Director of Special Education, are both alleged to have been informed of physical abuse suffered by J.B. at the hands of his transportation providers and aides, *i.e.*, their subordinates. Yet, despite knowledge of this wrongdoing, it is claimed that Sorber and Oiler did nothing, permitted the abuse to continue, and failed to ensure that NASD's transportation personnel were adequately trained on dealing with autistic students. Further, Sorber and Oiler's failure-to-train their subordinates in dealing with the needs of autistic students in light of the allegations presented here are sufficient to permit plausible findings of deliberate indifference and a causal nexus between the failure-to-train and the constitutional deprivation at issue. At this stage, Plaintiffs allegations are sufficient to proceed as against Sorber and Oiler on this claim.[3]

---

[3]    In her motion to dismiss, Oiler contends that she is entitled to qualified immunity on Plaintiffs' § 1983 claims. (*See* Doc. 21, 7-10). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, - - - U.S. - - -, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985  (2012)). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First, a court must decide 'whether the facts that a plaintiff has  shown make out a violation of a constitutional right.' And second, the court must determine 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.' Courts may begin their consideration with either prong." *Id*. (alteration omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). "Qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citation and quotation omitted). Oiler's qualified immunity argument is premised entirely on the first prong, *i.e.*, that the Complaint fails to allege any facts that she violated J.B.'s constitutional rights. (*See* Doc. 21, 9). But, as stated in the text, Plaintiffs have stated a plausible

The allegations against McGovern, however, are different. Unlike Sorber and Oiler, the Complaint is devoid of allegations that McGovern established and maintained a policy or custom or that he had knowledge of and acquiesced in his subordinates' violations of J.B.'s rights. More particularly, the Complaint does not include any substantive factual averments involving McGovern. He is not claimed to have been informed of the alleged abuse, nor is it alleged that he adopted a policy or practice of refusing to provide training to transportation officials in the handling of special needs students. The Fourteenth Amendment claim against McGovern, as presently constructed, seeks to hold him responsible on a *respondeat superior* theory. They cannot do so, so the failure-to-train claim against McGovern will be dismissed.

**B.    Rehabilitation Act Claims.**

In Counts III and IV(a) of the Complaint, Plaintiffs assert that Defendants violated J.B.'s rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. As stated before, Plaintiffs do not seriously contest that the Rehabilitation Act claims are not viable against individual Defendants. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."). That leaves the question of whether Plaintiffs have pled plausible Rehabilitation Act claims against NASD.

Section 504 of the Rehabilitation Act bars federally funded entities from discriminating on the basis of disability, providing in relevant part, as follows:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

failure-to-train claim against Oiler. And because Oiler does not advance any argument as to the clearly established prong of the qualified immunity analysis, I do not consider that unbriefed issue here. If this issue is raised at a later stage in this litigation, I will address it at that time.

29 U.S.C. § 794(a). To establish a claim pursuant to Section 504, a plaintiff must demonstrate that (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (citation omitted), *superseded by statute on other grounds*. Where, like here, a plaintiff seeks compensatory damages on a Section 504 claim, the plaintiff must also prove that the discrimination or denial of benefits at issue was intentional, or at least that the defendant exhibited deliberate indifference to the underlying discrimination. *See Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014). NASD argues that Plaintiffs have failed to allege intentional discrimination, deliberate indifference, and/or a denial of benefits. I disagree.

"The 'intentional discrimination' standard demands proof that, at a minimum, the school district exhibited 'deliberate indifference' to the underlying act of discrimination." *Shadie*, 580 F. App'x at 70 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). "To show deliberate indifference, the plaintiff must establish '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Id*. (quoting *Lower Merion*, 729 F.3d at 265). "Deliberate indifference 'does not require a showing of personal ill will or animosity toward the disabled person,' but 'must be a deliberate choice, rather than negligence or bureaucratic inaction.'" *Id*. (quoting *Lower Merion*, 729 F.3d at 263).

The allegations in the Complaint satisfy this standard. Plaintiffs allege that J.B. was subjected to inappropriate verbal and physical abuse stemming from a transportation aide's inability to properly accommodate his disability. *Cf. Shadie*, 580 F. App'x at 67. It is claimed that Sorber and Oiler were advised of issues relating to the inability of NASD's transportation personnel to deal with J.B.'s behaviors caused

by his medical diagnoses during the 2015-2016 school year. Oiler was also informed that Bobersky was suspected of abusing J.B. early in the 2016-2017 school year. Nonetheless, despite this, NASD hired Bobersky to a full-time position two weeks after the abuse was reported. Bobersky remained in her position as J.B.'s aide for months, until another student reported the ongoing abuse being suffered by J.B., which he ultimately captured on video. Yet, even after being informed of the content of the video, Bobersky and Monroe were permitted by NASD to transport other special needs students. These facts are sufficiently reflective of deliberate indifference on behalf of NASD and its employees, so Plaintiffs' Rehabilitation Act claim and the demand for compensatory damages thereunder will not be dismissed.

**C.     Americans with Disabilities Act Claim.**

Next, Plaintiffs contend that NASD violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. Because Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time, for the above reasons, Plaintiffs' ADA claim against NASD will not be dismissed. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (Title II and Section 504 claims are considered together because "the substantive standards for determining liability are the same."); *Lower Merion*, 729 F.3d at 260; *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012).

**D.     Assault and Battery Claims.**

Count V of the Complaint asserts claims for assault and battery against, *inter alia*, NASD. Those claims against NASD will be dismissed. The Pennsylvania Political Subdivision Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541; *see also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) ("local agencies such as school districts are given broad tort immunity" under the Political Subdivision Tort Claims Act). Bobersky's alleged conduct does not fall within any of the exceptions

to the statute.[4]  Accordingly, the assault and battery claims against NASD will be dismissed with prejudice.  *See*, *e.g.*, *C.T. by Smith v. Delaplaine Middle Sch.*, No. 17-4463, 2018 WL 1072385, at *4 (E.D. Pa. Feb. 26, 2018); *Pascocciello v. Interboro Sch. Dist.*, No. 05-5039, 2006 WL 1284964, at *8 (E.D. Pa. May 8, 2006).

**E.      Intentional Infliction of Emotional Distress Claim.**

Plaintiffs purport to assert an intentional infliction of emotional distress claim against NASD in Count VI of the Complaint.  But, just as with the assault and battery claims, NASD has immunity from liability for an intentional infliction of emotional distress claim under the Political Subdivision Tort Claims Act.  *See*, *e.g.*, *Tucker v. Sch. Dist. of Philadelphia*, No. 19-889, 2019 WL 3802066, at *5 (E.D. Pa. Aug. 13, 2019); *K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 375-76 (M.D. Pa. 2014).  This claim against NASD will also be dismissed with prejudice.

**F.      Negligence Claim.**

Count VIII of the Complaint asserts a negligence claim against NASD (as well as Barchik, Bobersky, and Monroe).  NASD argues that it is immune from the negligence claim in the matter *sub judice* under the Political Subdivision Tort Claims Act because the Complaint fails to include any facts which would render one of the exceptions under 42 Pa. C.S.A. § 8542(b) applicable.  I agree that none of these exceptions fit in this case, so the negligence claim against NASD will also be dismissed with prejudice.  *See*, *e.g.*, *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 930 (M.D. Pa. 2015); *M.U. v. Downingtown High Sch. East*, 103 F. Supp. 3d 612, 629-630 (E.D. Pa. 2015).

**G.      Punitive Damages.**

Defendants also seeks dismissal of Plaintiffs' claim for punitive damages

---

[4]      The exceptions to immunity provided by statute are: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks and (8) care, custody or control of animals. 42 Pa. C.S.A. § 8542(b).

against individual Defendants on the surviving § 1983 claims.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.*, No. 14-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017).

The challenge to the demand for punitive damages fails. The allegations against Sorber and Oiler regarding their alleged failure-to-train provides sufficient factual matter at this stage in the litigation to support a plausible finding of reckless or callous indifference to J.B.'s constitutional rights. Given this, Plaintiffs may proceed to discovery with their request for punitive damages against Sorber and Oiler.[5]

**H.      Leave to Amend.**

Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

---

[5]      Of course, punitive damages are not available against NASD under § 1983. *See, e.g.*, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983").

Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

Plaintiffs will be granted leave to amend. For one, it is possible that Plaintiffs could present a failure-to-train claim against McGovern that would withstand a 12(b)(6) motion. Moreover, while not entirely clear, it appears that Plaintiffs intended to file state law claims against Defendants Sorber, McGovern, and Oiler, but failed to properly indicate as such in the Complaint. Thus, they will be given leave to amend to the extent they wish to plead such causes of actions.[6] Accordingly, Plaintiffs will be given twenty-one (21) days to file an amended complaint.

## IV. Conclusion

For the above stated reasons, the motions to dismiss filed by District Defendants and Oiler will be granted in part and denied in part.

An appropriate order follows.


November 13, 2019                                      /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                      United States District Judge

---

[6]     This does not mean that had Plaintiffs included such claims in the Complaint that they would have been able to withstand a motion to dismiss. I do not pass on that issue at present.